IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS CARLOS LOPEZ,<br><br>    Petitioner,<br><br>  v.<br><br>ROBERT J. HERNANDEZ, Warden,<br><br>    Respondent.<br>                                  / | No. C 08-4903 WHA (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

This is a habeas case filed pro se by a state prisoner pursuant to 28 U.S.C. 2254. Respondent was ordered to show cause why the writ should not be granted based on the two remaining claims in the petition. Respondent has filed an answer and a memorandum of points and authorities in support of it. Although given an opportunity to file a traverse, petitioner has not done so. For the reasons set forth below, the petition is **DENIED**.

## STATEMENT

In 2005, petitioner was charged with 14 counts of committing lewd or lascivious acts on a child under age 14 by force. Cal. Pen. Code, § 288 (b)(1). The jury convicted petitioner on all 14 counts against the victims, who were his three stepchildren, and also found true allegations that he committed an offense against more than one victim. Cal. Pen. Code, § 667.61 (b), (c), (e). The court sentenced him to a base term of 18 years in prison and imposed a consecutive term of 150 years to life in prison. An immigration hold was placed on defendant.

On January 25, 2008, the California Court of Appeal affirmed the judgment (Exh. G). The California Supreme Court denied petitioner's petition for review on April 9, 2009 (Exh. H). Petitioner filed the instant federal habeas petition on October 27, 2008.

The following background facts describing the crime are taken from the opinion of the California Court of Appeal:

> Defendant was prosecuted for molesting his three stepchildren. Counts 1 through 6 alleged lewd or lascivious acts against Martin, 7 through 10 against Cindy, and 11 through 14 against David.
>
> Defendant committed each charged crime while the family was living at a particular apartment complex in San Jose (hereafter the "Apartment Complex"). Defendant testified that he lived there during 1996, 1997, and 1998. Immediately before then, and as late as November 6, 1995, he and his family were living in another apartment elsewhere in San Jose.
>
> I.   *Crimes Against Martin*
>
> Martin testified that he was born in March 1988. When he was about eight years old, defendant summoned Martin to his bedroom at the Apartment Complex. Defendant was lying naked on the bed and made Martin masturbate him (count 1) and orally copulate him (count 2) while further masturbating him (count 3).
>
> Defendant later committed more sex crimes against Martin at the Apartment Complex. In the second incident he forced Martin to masturbate him (count 4). In the third incident he forced Martin to masturbate him (count 5) and orally copulate him (count 6).
>
> II.   *Crimes Against Cindy*
>
> Cindy testified that she was born in December 1986. She, too, was sexually molested by defendant. When she was about seven or eight years old defendant called her into his bedroom and forced her to masturbate him twice (counts 7 and 8). In another incident, also when Cindy was seven or eight, defendant called her into his bedroom and told her to expose herself (count 9). In a third incident, defendant touched her buttocks with his penis (count 10). Each incident occurred at the Apartment Complex.
>
> III.   *Crimes Against David*
>
> David was born in February 1985. In one incident defendant forced David to orally copulate him (count 11). In another, when David was between 11 and 13 years old, defendant forced David to sodomize him by holding on to David's penis and inserting it in his anus (count 12). In another, also when David was between 11 and 13 years old, defendant orally copulated him (count 13). In another, defendant committed forcible sodomy against David (count 14). Each incident occurred at the Apartment Complex.

(Exh. G at 2-3).

# ANALYSIS

**A.  STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th

3

Cir.), amended, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and convincing evidence to overcome Section 2254(e)(1)'s presumption of correctness; conclusory assertions will not do.  *Ibid.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

**B.      ISSUES PRESENTED**

As grounds for federal habeas relief, petitioner's remaining claims are that: (1) his rights to due process and effective assistance of counsel were violated by counsel's failure to raise the statute of limitations defense; and (2) the trial court deprived him of due process and effective assistance of counsel by erroneously responding to a question by the jury in the absence of both petitioner and his attorney.

### 1.      Statute of Limitations

Petitioner claims that the jury instructions violated his right to due process because they allowed for the possibility that he would be convicted for conduct occurring outside of the statute of limitations.  The parties agree that the statute of limitations for a violation of Section 288 (b)(1) of the California Penal Code is ten years.  *See* Cal. Pen. Code, § 801.1 (b).  The felony complaint against petitioner was filed on August 1, 2005, and therefore charges for any conduct occurring before August 1, 1995 are time-barred.  The jury instructions described each of the fourteen counts as follows: "That in the County of Santa Clara, State of California, on or about and between January 1, 1995 and October 1, 1998, the said defendant, JESUS CARLOS LOPEZ, committed a Felony" (Exh. A at 311-23).  Petitioner argues that because the instructions included the time period between January 1 and August 15, 1995 his conviction could have been based upon conduct prior to August 15, 1995, which would be time-barred.  Petitioner also claims that he received ineffective assistance of counsel because counsel did not raise this issue at trial.

### a. **Due Process**

Petitioner argues that his due process rights were violated when the court instructed the jury that they could convict on charges occurring on or after January 1, 1995, as opposed to on or after August 1, 1995. However, petitioner does not cite, nor is the court aware, of any "clearly established" Supreme Court precedent, *see* 28 U.S.C. 2254(d)(1), that due process prohibits a conviction based on conduct occurring outside a state's statute of limitations. A federal habeas court cannot find the state court's ruling was an "unreasonable application" of "clearly established federal law" under 28 U.S.C. 2254(d)(1). *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (citing *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

Even if such precedent existed, federal habeas relief is not available on petitioner's claim because there was no violation of the statute of limitations in this case. The California Court of Appeal determined that there was no violation of the statute of limitations (Exh. G). Under California law, the information must allege facts that show the prosecution of the defendant began within the time limit set by the applicable statute of limitations. *See People v. Williams*, 21 Cal. 4th 335, 339-42 (1999). When "the charging document indicates on its face that the action is time-barred" but the state appellate court determines from the record that the bar does not apply, the conviction can be upheld by that appellate court. *See id.* at 341. In other words, "despite the prosecution's error in filing an information in which those counts appeared to be time-barred . . . if the reviewing court can determine from the available record, including both the trial record and the preliminary hearing transcript, that the action is not time-barred . . . defendant's convictions…will stand." *People v. Smith*, 98 Cal. App. 4th 1182, 1189 (2002).

The California Court of Appeal determined that there was no violation of the statute of limitations here because there was strong evidence "that "all of the charged crimes occurred after August 1, 1995, and hence within the agreed-upon 10-year statute of limitations period" (Exh. G at 5). The appellate court cited the fact that all of the victims testified that all of the charged events occurred after the family moved, on November 6, 1995, to an apartment in Canoas Gardens Apartments in San Jose ("Apartment Complex") (*ibid*). Although petitioner argues that the victims testified as to other events occurring prior to the move to the Apartment

1  Complex, the evidence at trial was that "each *charged incident* occurred at the Apartment
2  Complex, and hence after November 6, 1995" (*ibid*).  Therefore, the state appellate court
3  concluded that the "preponderance of the evidence is that none of the charged incidents is time-
4  barred.  Accordingly, defendant's claim fails to persuade (*ibid.*)."

5  The California Court of Appeal's determination of state law is binding.  *Bradshaw v.
6  Richey*, 546 U.S. 74, 76 (2005) (state court's interpretation of state law announced on direct
7  appeal of challenged conviction binds federal court sitting in habeas corpus); *Hicks v. Feiock*,
8  485 U.S. 624, 629, 30 n.3 (1988) (even determination of state law made by intermediate
9  appellate court must be followed).

10 Petitioner cites no evidence that the charged incidents occurred before August 1, 1995.
11 As a result, under California law as explained by the state appellate court, the convictions were
12 not time-barred, notwithstanding the dates set forth in the jury instructions.  Therefore, if due
13 process guarantees that a defendant will not be convicted for crimes committed outside of a
14 state's statute of limitations, there was no violation of due process in this case.

### b. Ineffective Assistance of Counsel

16 Petitioner claims that he was denied effective assistance of counsel by counsel's failure
17 to raise the statute of limitations defense for conduct occurring prior to August 1, 1995.  A
18 claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth
19 Amendment right to counsel, which guarantees not only assistance, but effective assistance of
20 counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  In order to prevail on a Sixth
21 Amendment ineffectiveness of counsel claim, petitioner must establish two things.  First, he
22 must establish that counsel's performance was deficient, i.e., that it fell below an "objective
23 standard of reasonableness" under prevailing professional norms.  *Id.* at 687-88.  Second, he
24 must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a
25 reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding
26 would have been different."  *Id.* at 694.  A reasonable probability is a probability sufficient to
27 undermine confidence in the outcome.  *Ibid.*

28 Here, petitioner does not establish the first part of the test as he does not show that

6

counsel's performance was deficient. As discussed above, the evidence at trial established that the charges of which petitioner was convicted were for conduct occurring after August 1, 1995, within the applicable statute of limitations. Consequently, petitioner was not prejudiced by counsel's failure to raise a statute of limitations defense because if counsel had raised such a defense, it would have failed and made no difference in the outcome of the trial. The any statute of limitations defense would have been unsuccessful. Accordingly, habeas relief is not available on this claim.

### 2. Response to Jury Question

Petitioner claims that the trial court violated his right to due process and his right to effective assistance of counsel by erroneously responding to a jury question in the absence of both petitioner and his counsel. During deliberations, the jury sent a question about possible evidence to the court. On the first day of jury deliberation, the jury asked the following question: "Did the defense in cross establish that a report was made or not made by Martin to the police or social worker in 2002? Is there any evidence for this report? Did the report include sexual abuse or physical abuse or both? Do we know the date of report? When exactly?" (Exh. A at 243-44). There was no evidence regarding any police report by Martin at trial. The trial court notified both counsel of the note, and both counsel agreed to the court giving its intended response to the jury without the parties being present (*id.* at 244).

The judge then entered the jury room and gave the following response:

Our response to your note is as follows: I'm going to refer you to CALJIC 1.00, which is the very first instruction that I read to you. It says "Respective duties of judge and jury," and I'm going to refer you to that paragraph that starts off with the sentence: "You have two duties to perform. First you must determine what facts have been proved from the evidence received in the trial and not from any other source. Okay.

You're not to speculate about anything, you're not to speculate as to what the evidence might be, should be, will be. You can only decide the evidence from the evidence that was received during the course of the trial, which means the testimony of witnesses and any exhibits that were admitted, that's evidence.

Secondly, I'll refer you to 1743. If you look at the instructions, they are numbered. And 1743 is one of the concluding instructions that deals with readback. During deliberations, any question or request you may have should be addressed to the Court on a form that will be provided. If there is any disagreement as to the actual testimony, you have the right, if you choose, to request a readback by the reporter. You may request a partial or total readback, but any readback should be a fair presentation of that evidence.

7

(Exh. B at 466-69).

### a. Due Process: Erroneous Answer to Jury's Question

Petitioner claims that he was deprived of due process rights because the trial court's answer to the jury's question was erroneous.

As an initial matter, because petitioner did not contemporaneously object to the answer, he has procedurally defaulted this claim from a federal habeas corpus review. A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). The California Court of Appeal held that petitioner had forfeited his claim by approving the court's answer to the jury's question at the time the answer was proposed by the judge (Exh. G at 7). The Ninth Circuit has recognized and applied the California contemporaneous objection rule in affirming denial of a federal petition on grounds of procedural default where there was a complete failure to object at trial. *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *see Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (finding claim of instructional error procedurally defaulted where state court ruled that claim waived by failure to object to the instruction at trial); *Davis v. Woodford*, 384 F.3d 628, 653-54 (9th Cir. 2004) (finding claim procedurally defaulted where state supreme court found constitutional claim waived because petitioner failed to raise it below). Because petitioner failed to contemporaneously object to the proposed response at trial, and indeed agreed to the court's response in advance, and the California Court of appeal ruled that the claim was thereby waived on appeal, his claim that the answer violated his right to due process is procedurally defaulted from federal habeas review.

Even if petitioner had not procedurally defaulted this claim, it fails on its merits. To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Ibid.*

8

First, petitioner argues that when the court stated, "You're not to speculate about anything, you're not to speculate as to what the evidence might be, should be, will be" the jury would believe that it should not use its independent judgment to determine whether petitioner was guilty (Exh. G at 8). This is a very unlikely interpretation of the court's statement when viewed in the context of the question that the jury had asked. The jury asked for evidence that had not been presented at trial, specifically evidence of witness Martin's 2002 police report (*ibid*). In such a context, the trial court's answer was not to keep the jury from analyzing the evidence properly presented, but instead to prevent the jury from relying on matters not admitted as evidence. The trial court's response did not precluded the jury from using personal judgment in weighing evidence as the jury could still draw negative inferences from any evidence that counsel failed to present. The state appellate court reasonably held that the court's answer was a "straightforward and unambiguous" instruction to the jury to "consider only evidence that the evidentiary phase of the trial had produced" (*ibid*). In the context of the question asked, the trial court's response was a fair instruction to the jury to only consider evidence presented at trial.

Second, petitioner argues that in responding to the jury's question, the trial court improperly reminded the jury, pursuant to CALJIC No. 17.43, that it could request readback of testimony. The trial court stated: "During deliberations, any question or request you may have should be addressed to the Court on a form that will be provided. If there is any disagreement as to the actual testimony, you have the right, if you choose, to request a readback by the reporter" (Exh. G at 9). Petitioner argues that this misled the jury to believe that only if they "disagreed about the testimony could they ask for a readback" (*ibid*). The trial court informed the jurors that they could request readback if "any disagreement" occurred, which is not the same as requiring an "absolute" disagreement (*ibid*). If the jurors remembered the testimony and had no questions or concerns about it, it is unlikely they would ask for a readback. If the jury did have questions about the testimony, the jury would not have reasonably understood the "court's instructions as forbidding them to ask to have it read back unless they disagreed in an absolute sense" (*ibid*). In addition, the jury had not asked for readback in this instance, so the

9

1    court's response was not to limit when the jury could ask for readback, but instead to remind the
2    jury of their general right to readbacks.  Therefore, the court did not limit the jury's right to
3    readback, as the petitioner argues, but if anything simply encouraged the proper use of readback
4    if the jury had any further evidentiary questions.

5    Under these circumstances, the state court made a reasonable determination that the
6    court's response to the jury's question did not render the trial fundamentally unfair so as to
7    violate his right to due process.

### b. Due Process: Right to be Present

9    Petitioner claims that he was deprived of due process rights because he was not present,
10   nor had he waived his right to be present, when the court responded to the jury question.  The
11   Supreme Court has recognized that "the right to personal presence at all critical stages of the trial
12   . . . [is a] fundamental right[] of each criminal defendant." *Rushen v. Spain*, 464 U.S. 114, 117
13   (1983).

14   However, petitioner does not cite, nor is the court aware of, any Supreme Court
15   precedent establishing that the answering of jury questions is a critical stage of criminal
16   proceedings at which the defendant has a right to be present.   Because the Supreme Court has
17   not determined whether the answering of jury questions is a critical stage, there is no guaranteed
18   constitutional right to presence.  *See* 28 U.S.C. § 2254(d)(1);  *cf. La Crosse v. Kernan*, 244 F.3d
19   702, 707-08 (9th Cir. 2001) (the Supreme Court has never addressed whether readback of
20   testimony is a critical stage, so it cannot be said that a state court's rejection of a claim that
21   petitioner had a right to be present at that stage "was contrary to or an unreasonable application
22   of clearly established federal law").  Even if the Supreme Court had established that the
23   answering of jury questions was a critical stage, relief would still be declined on this issue as the
24   petitioner's presence would not have made a difference.  For the reasons discussed above, trial
25   court's response to the jury's question was proper.

26   Respondent argues, and the state appellate court accepted, that petitioner had waived his
27   right to be present for the court's answer to the jury question because counsel "acceded to the
28   court's proposed procedure to enter the jury room with only the court reporter" (Exh. G at 7).  A

10

1  defendant can waive the right to personal presence, but he must do so personally; that counsel is
2  notified is irrelevant. *See Turner v. Marshall*, 63 F.3d 807, 815 (9th Cir. 1995) (readback of
3  testimony), *overruled on other grounds by Tolbert v. Page*, 182 F.3d 677, 685 (9th Cir. 1999)
4  (en banc). Consequently respondent's waiver argument is unavailing.

Although petitioner did not waive his right to be present during the court's response to the jury's question, there was no constitutional right to presence and therefore no constitutional violation. Accordingly, habeas relief is not available on this claim.

### c. Ineffective Assistance of Counsel

Petitioner claims that he received ineffective assistance of counsel because counsel failed to object to the trial court's answer to the jury's question. As discussed above, in order to prevail on a claim of ineffective assistance of counsel, petitioner must establish that counsel's performance was deficient and that petitioner was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. 668. Petitioner does not establish that the counsel's performance was deficient. As discussed above, the response to the jury question did not violate due process and the California Court of Appeal held that the response also did not violate California law, a determination binding on federal habeas review (Exh. G at 8-9). *See Hicks*, 485 U.S. at 630. Therefore, any objection to the answer on either due process or state law grounds would have been without merit, and counsel cannot have been ineffective for failing to make a meritless objection. *See Juan H.*, 408 F.3d at 1273. Accordingly, the state court's rejection of petitioner's claim of ineffective assistance of counsel was neither contrary to nor an unreasonable application of clearly established federal law.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**.

Rule 11(a) of the Rules Governing Section 2254 Cases now requires a district court to rule on whether a petitioner is entitled to a certificate of appealability in the same order in which the petition is denied. Petitioner has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would

//

11

find this court's denial of his claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Consequently, no certificate of appealability is warranted in this case.

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: July  7 , 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.08\LOPEZ4903.RUL.wpd